The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's case will be called as previously announced and the times will be as allotted to counsel. The case today is Emhart Industries, Inc. v. CNA Holdings, LLC. At all, Appeal Number 191563. Attorney Killian. Good afternoon, Your Honors. I'm Brian Killian on behalf of the appellants and I would like to reserve three minutes for rebuttal. You may. Good afternoon. Thank you. In two critical ways, this consent decree and settlement in this case are unlike any other that has been before this Court. First, the remedy in the consent decree is identical to one that the district court held unlawful earlier in the proceedings and two, out of nearly two dozen non-operating PRPs, the only ones who settled in this case are other federal agencies. Now CERCLA requires a district court to exercise independent judgment and to fulfill that obligation in this case, the district court needed to explain why and based on evidence, this settlement and this consent decree are fair and lawful despite these unprecedented distinctions. The district court did not do that. We believe that the court was excessively deferential and therefore abused its discretion. I would like to start, if I could, Your Honors, with the remedy and the rod in the phase two order and then move to the settlement issues for the second half of my argument. You may, but I would like you to tell me what this means when we held it canon that the agency's expertise and the party's agreement, end quote. Yes, there is deference in this circumstance, Your Honor, but we think that one thing that distinguishes this from canons and indeed from any other case we have encountered and certainly this Court has encountered is that there is a prior decision from the Court very well considered that reaches the exact opposite conclusion from what is in the consent decree and so while there may be a deference to the agency. Was that finding a law of the case? Is that what you're saying? No, and let me be very clear. We're not arguing that the phase two decision is law of the case or that the phase two decision prevents the Court from ever entering a consent decree. Rather, our argument is a little more narrow in that the phase two decision, because of its significance and because of the district court's obligation to exercise independent judgment in approving a consent decree in CERCLA like this, at least requires the Court to explain why it has changed its mind, assuming it has, for without that explanation, it's not clear to the public and certainly to us whether the district court had fairly changed its mind or whether the Court simply misperceived its role in reviewing this consent decree. In canon, we also said that the Court did only confirm that the CD is, quote, reasonable, fair, and consistent with the purposes of CERCLA, is intended to serve. Yes, and our view is that after the district court held that this remedy was unlawful, it cannot be consistent with the purposes of CERCLA. There is a fundamental disconnect. What's the significance of the fact that there was a motion for reconsideration filed with respect to the question of both the fish and the groundwater contamination, made the argument that the district court had erred in saying that it was arbitrary and capricious, and then following that motion for reconsideration, the district court took away his order and avowed that it was no longer arbitrary and capricious. I guess I'm not following. Where was the lack of explanation? Well, in the order approving the consent decree, Your Honor, and I think the reason is, the reconsideration motion is relevant, as is the appeal that the United States took after that original decision. Certainly, the United States believed that the phase two order was wrong. The district court responded to the motion for reconsideration by withdrawing his prior order after receiving the motion for reconsideration. My understanding, Your Honor, is that after the motion for... I'm sorry. Is that wrong? My understanding is slightly different, is that the district court, because the notice of appeal had been filed, the parties went back to the district court and asked whether it would entertain the reconsideration motion. The district court said yes, and so this court remanded the case to the district court for those proceedings to go forward, right? Because of the notice of appeal, the district court did not have jurisdiction to entertain that reconsideration motion otherwise. The parties briefed the issue, but before the court was able to decide it, the parties returned to the court. The prior order is no longer in effect. Oh, sure. As part of the consent decree itself, yes, the order was vacated. In doing that, he said it was no longer arbitrary and capricious, correct? No, that... Well, let me be precise. What he said was in the consent decree and in the order, he said that he had reached the... Well, that the remedy was not inconsistent with the national contingency plan, whereas in the phase two ruling, he said the exact opposite, that it was inconsistent. Yeah, in between those two events, he had received a motion of consideration laying out the government's position as to why it was not inconsistent. I wouldn't stand to reason that we would just say that he must have concluded that those arguments were good, or is that the only flaw, that he didn't specifically say that? Well, I think it's not simply a failure to explain... Well, I take that back. It is a failure to explain, because without the explanation... Let me just... Do I get this right? If he had said, in light of the arguments in the motion for reconsideration, it's no longer inconsistent with the NCP, does your procedural argument go away? I think if he had said, my phase two order was wrong, and in light of the rules that govern reconsideration, I'm changing my mind, I think that would resolve most of our issue as to the consent decree. We don't think he said that, though. What if it's not so much that it's wrong, as much as there are two fair sides here, and now they've settled it, and I think this is fair and reasonable, and he has a little footnote about the groundwater issue, and then the consent decree allows additional sampling if the, what's it, RCRA C-CAP is still necessary, so there is provision for some of the things he was worried about. Your Honor, I think that in the ordinary case, if this were not a CERCLA case, the rules that govern reconsideration would require the court to give that explanation to the public, right? A CERCLA consent decree affects more than just the settling parties. It affects the public at large, it affects non-settling parties, and so the requirement for independent judgment, which CERCLA imposes on judges in this circumstance, we believe at least requires the court to put forth that explanation and show that the court was not being overly deferential, right? The flip side of independent judgment is excessive deference, and so when there is a pro forma decision at the three or four-page order that enters the consent decree, it doesn't explain why the court has changed its mind, but simply in conclusory fashion asserts this is not inconsistent with the national contingency plan. Two points on that, so I get it. The first is, I'm still not entirely clear what follows if you're right about the explanation. So let's say I grant that the modification provision can't solve the problem because there's still, if you are right, an illegal decree, effectively, and so modification can't solve it, so I understand the argument. One answer to that is, well, he said it's not illegal because he said it was not inconsistent. You say, but I don't know what that means, you haven't explained yourself, but you've also said if he had said the reason it's not illegal is because I accept the arguments in the motion for reconsideration, then there's no procedural problem, correct? If the district court had said that, essentially reconsidered its decision, correct? I think that's what I understand your honor to be saying, is if the court had followed... If he said, the reason I conclude it's not inconsistent is because I accept the government's argument in its motion for reconsideration, would that have been sufficient? Absolutely. Okay, so what do you want us to do if you're right? So if we're correct, we think it needs to be sent back so that the district court can provide that explanation, because as we perceive the record... If we did a limited remand, we just ask him, was it based on the motion for reconsideration? He says, yes, the case is over. As to the consent decree, perhaps, but there is a settlement portion of this as well. Okay, then second point on the consent decree. What if the RCRA cap is not implicated by the groundwater finding, which was one of the arguments the government made in the motion for reconsideration? Correct. What is the import to you of the groundwater finding? The groundwater classification, as it pertains to us, is that it is, as the district court said in the phase two order, if it's not inextricably intertwined in the classification, I don't perceive has an impact on the ultimate remedy that our clients might ultimately pay for. But on that point, your honor, I would just emphasize that we are with the district court and it's finding in the phase two decision that they are inextricably intertwined. We think that was the correctly reasoned approach. So I guess, unless your honors have further questions on the remedial aspects of this in the few minutes I have left, I would like to talk about the settlement between EPA and the DOD. So a special feature in CERCLA is contribution protection. When a party settles with the EPA, they are protected from contribution claims brought by other PRPs. And so because of contribution protection, district courts have to be careful to ensure that a settlement is fair to all parties, is fair to the non-settling parties. Here, we believe that the EPA did not substantiate the fairness of its $550,000 settlement with the federal agencies. What EPA has told the district court was that the agencies can settle at this point, or settle with the agencies because the agencies aren't liable. At a high level, we think there are two problems with that that I want to unpack with your honors' permission. First, we think that mischaracterizes the Phase I decision, and two, it's an incomplete response to all of the aspects of substantive fairness. So turning to the first of these, the agencies were clearly not off the hook or out of the case after Phase I. Phase I happened four years before this settlement, and the DOD remained in this case for four years afterwards. That's because Phase I was focused on DOD's liability for one particular chemical, for dioxins. Whether DOD was liable for other chemicals was going to be adjudicated in later phases of the case. Now, we're not saying that EPA is prohibited from settling with DOD before Phase III of the case. This court has already rejected that, and it would make no sense if the EPA could only settle with parties who have adjoined claims. What we're saying is that EPA's citation of the Phase I decision is simply incomplete. It doesn't address whether and to what extent the settling parties might be responsible for the other chemicals at the site, nor does it address the allocation of responsibility and, importantly in this case, the arm, the requirement that EPA settle in an arm's length settlement with other federal agencies. In a sense, EPA is not allowed to pick favorites when it settles because of contribution protection. And so in most cases, indeed the ones we're familiar with, when EPA settles with a party, the responsibility is allocated with respect to something at the site. There's a neutral or site-specific basis that the agency provides for why it's settling with who it's settling with. So in the Cannons case, EPA drew a line at 1%, and anyone who had provided less than 1% of the barrels at the site got a settlement fine. In the Charles George case, EPA drew a line in its settlement between owner-operators and between arrangers and transporters. And the courts are very deferential when EPA comes forward with a site-specific... I don't understand your argument. So two points. One, I thought in the record the district court concluded that these parties with whom the settlement was reached had drums that didn't have anything in it effectively. I think that's an overstatement of what the district court held. The district, if I could respond a little more fully, Your Honor. In phase one, Emhart's theory was that the DoD had sent something called tactical herbicides to the site and that those tactical herbicides produced dioxins, one of the main chemicals at the site. And instead, the court found that DoD had sent turbinol and turbinol to the site. But to draw the inference that turbinol and turbinol did not produce any of the other toxins at the site was not fully adjudicated in phase one because that wasn't at issue in phase one. And that's where we think there's the fundamental gap between what EPA has put... Do you view yourself as barred from adjudicating that in phase three while the DoD is protected? Wouldn't that reduce your share of responsibility if you actually were able to prove that? Under the... If I understand Your Honor's question correctly, yes, if we can prove... But the problem is the contribution protection so that we can't actually go after DoD for that share afterwards. To the extent... But with respect to that, didn't you have an opportunity to object at phase one just on this exact point? We did not, nor did we need to because of footnote 121 in the district court's opinion. I thought there was an exchange with the district court where you said, your client, that they wanted to be able to show that he was wrong on that point. And his response back was, I don't see how you're going to do any better than Emhart on that point. Right. And so what Your Honor asked about phase one, and that didn't happen at phase one. That happened in connection with the consent decree and with the settlement at the end of phase two. And so to Your Honor's specific question, during phase one, we didn't file an objection, number one, because we were stayed, and number two, because... I meant at point of settlement, which is the relevant point. Right. Although this is an important point from my perspective or our client's perspective is that in the district court's phase one decision at footnote 121 that I alluded to a moment ago, the court said, everything I've just ruled as to DOD and Emhart isn't going to apply to these third parties. I understand that at phase three, we're going to get to adjudicate this. So when it came time to the phase two... But then they come to settlement. Your objection is at settlement that you got hurt by the settlement because you got barred from a contribution opportunity. Exactly. At settlement, you had the opportunity to make the case to the district court. He should not approve the settlement precisely for that reason, that you haven't had a chance to fully prove it. He said in response, well, Emhart has done everything. I have no reason to think you'll do better than Emhart. So why isn't that an explanation for why he then went ahead with the settlement? Well, to be fair, when it comes to the settlement, I'm not sure our objection is that to the district court's failure to explain. It's just that the court made a mistake in that the court drew an improper inference based on what had been proven in phase one that my clients would have nothing. We could not do better than Emhart. It's not a question of doing better. It's a question about different chemicals. That's just a substantive objection to the consent decree then. That's not a procedural about fairness and about whether you got a fair opportunity. Well, I think this goes to the allocation of responsibility between settling and non-settling  rather have an articulable basis that's not just that the settlement is fair to DOD, but that it is fair and applies some sort of neutral terms that apply to other parties. The EPA's assertion that DOD is not liable, we think, could at most show that DOD is not liable for the dioxins and so there's an absence of evidence. There's nothing. EPA didn't come forward and say, well, hey, DOD is also not responsible for these other chemicals. That wasn't at issue in phase one and so the district court's reliance... You had full access to all the discovery, right? Didn't that come out in the hearing? We were completely stayed until the start of phase three. No, but you don't have all the discovery materials now or then? Well, we didn't participate in the discovery. I understand that, but you had access to all the discovery materials, right?  I thought that came out in the hearing. Was there even a glimmer that you presented to the district court that he was wrong, that there were these other horrible toxins? What I'm getting at, though, Your Honor, is that if you take a look at the case management order, which is at page 297 of the appendix, the district court did not allow for the introduction of evidence as to all other toxins in the first phase. The first phase was about divisibility of harm, a unique concept in CERCLA that says a party who is ordinarily, jointly, and severally liable for all pollutants at this point. Is the basic idea you're saying that there is a category of evidence that he just never looked at and then consequence of not looking at that, there's no way this finding could on that record ever be supported? Is that the basic argument? Yes, and that EPA did not come forth with anything along those lines either and the upshot is that our clients won't get to make that argument later on. Yes, that is it in a nutshell, Your Honor. There is a category of evidence as to DOD's liability that was not germane to phase one, thus wasn't produced for phase one, and EPA didn't even attempt to come forward with it in connection with its settlement with the DOD here. And so that goes, it therefore prevents the district court from being able to judge whether this settlement fairly allocates liability between the settling parties and the non-settling parties, which this court has said is one component of substantive fairness. But in answer to Judge Sarris' question, if there's not even a glimmer of an indication that the other evidence you're talking about would matter and the district court says you haven't made any showing that it would matter, then we just are reviewing whether he's right or wrong on that, right? Well, I'd like to say there's a glimmer, Your Honor, because this is our client's theory. It's just we've not been involved in any discovery nor had the opportunity to develop this as a factual matter within the case owing to the case management order. So it puts us in a little bit of a catch-22, you know, our failure to have evidence of something that we've been precluded from having evidence on, which is why I'm focused on EPA's failure to show why the theory that we intend to litigate at phase three is so hopeless that they should be able to settle on the basis of the phase one findings alone. So I've gone over my time, Your Honors. I would like to make one very last point on the settlements, if I may, which is that there is in several cases when EPA settles only with another federal agency, an extra concern about whether the settlement is arm's length. And the district court in Pennsylvania in the Pesce's case that we've cited to this court and to the district court said that when the agency does not open negotiations to everybody, it sort of puts a thumb on the scale in the conclusion that this is not an arm's length settlement. At the end of the day, this settlement was the settlement aspect of this was between EPA and DOD. And that settlement was not open to everyone. EPA admits that to pages 38 and 39 of its brief to this court. And we think for that additional reason, the substantive fairness of this settlement is called into question. And so I know I've used up a little bit more than my time. I mean, I still have any specific allegations in that respect. Specific other. All I have are the objective facts, Your Honor, that EPA refused to negotiate with any of the NEC customer group except for DOD. It made its mind up and only invited DOD to that table. And so, you know, there is I think that calls into question. We're not saying it's impossible that this is an arm's length settlement. Again, this is EPA's failure to put on evidence to show that this was truly an arm's length settlement. And because of the concerns that arise with contribution protection, the court needed to scrutinize. The district court should have scrutinized more closely to make sure that this wasn't a sweetheart deal between two federal agencies. So unless the court has further questions, I'll take the remainder of my time for rebuttal. How much time is that? I've gone over, Your Honor. May I still have? I don't think you asked for any rebuttal time. Judge, if I may, I think he asked for three minutes. Oh, OK. I may have said yes. All right. Well, you can have three minutes. Thank you very much. Attorney Killian, if you could please mute your audio and video at this time. And Attorney Joan Pepin, you'll be arguing next. If you could argue, you'll have 10 minutes. Thank you. May it please the court. My name is Joan Pepin on behalf of the United States. I'm with me at the virtual council table is Susan Forcier from the Rhode Island Department of Environmental Management, who has graciously allowed me to speak on behalf of both governments. After 13 years of litigation, the district court in this case entered a consent decree under which Emhart, which was found liable as the operator at this site, is going to pay for and carry out the entire cleanup at an estimated cost of nearly $100 million, is going to fully reimburse both the United States government and Rhode Island for 100% of their past and future response costs. And it also provides that the Department of Defense defendants, which had been held not liable and not just for dioxin, I'll get to that point, in the phase one trial, that these non-liable defendants will contribute $550,000 to this cleanup. This is the kind of resolution of a circle of litigation that is strongly encouraged by both Congress and this court, which has repeatedly recognized the strong public policy favoring settlements, especially in complex technical litigation. Could you address the point that your opponent is making about the groundwater finding? Because his contention is that even if all that's true, you can't have an illegal consent decree, and that absent a finding about the groundwater issue in light of his earlier order, what we have is an unexplained critical finding to a consent decree, which is arguably arbitrary and capricious, unless there's an explanation. Sure. Well, first of all, in the phase two decision, the district court never said that EPA could not still have the same remedy. It didn't say it had to change the remedy or that the remedy itself was illegal. It simply suspected that the groundwater classification was tied up with the selection of the soil remedy, inextricably intertwined, and wanted EPA to take another look at that. And EPA did in the motion for reconsideration, and the very end of the motion for reconsideration actually says, this is our response to that, that this is EPA's reconsideration. So the district court had that in front of it. It had the knowledge that, as we explained, the groundwater- I understand what he had in front of it. I guess the objection from your opponent is, but he didn't tell us why he did what he did then. And so there's two possibilities. One is we could imply or say that we could say he must have implicitly agreed with the motion for reconsideration. Or alternatively, even if he didn't, somehow the modification provision takes care of that. Is there some other possibility? Yes, there is. On page four of his decision entering the consent decree, the district court, first of all, says that he took into consideration all these things. And then he says, based on all of the things he's reviewed and the information provided at the three-hour hearing where these things were thoroughly discussed, that the remedial action described in the ROD, when viewed in light of how the statement of work and consent decree proposed to effectuate that remedial action, is not inconsistent with CERCLA and the National Contingency Plan. So he specifically stated, and then he drops a footnote about the change in the groundwater as one of the ways in which the implementation has satisfied his concerns. But the problem with that for me, which is that that is contemplating a modification that can occur. But you can't have a modification unless you have a decree first that needs to be modified. And I understand your opponent to be saying the decree itself is therefore unlawful unless the groundwater problem was solved at the time of the initial decree. So to that point, to me, it's not clear that the modification language in the SOW can solve that problem. Oh, and to be clear, we are not saying that modification language solves any problem. It's, first of all, the district court, the statement of work showed beyond any reasonable question, I think, that even without changing the remedy, that the remedy still is for a rickety cap on the entire source area as a soil remedy that has not changed. And regardless, even though the groundwater classification has changed, which is further proof that they are not inextricably intertwined, but the district court found, first of all, he said that these were pretty minor issues in the big picture. He explicitly said on page 749 and 750 of the appendix in the transcript, he said that he never said the soil remedy couldn't stay the same. And he also was in the role the second time around of not only having this additional implementation, but also having it be implemented without any of the issues he was concerned about. Suppose I had to write an opinion. The opinion was going to come out in your favor and the opinion was going to say it's fine that there was an earlier order saying it was arbitrary and capricious based on the fish issue and the groundwater issue and the inextricable linkage to RCRA. Because when he issued the new consent decree, he had concluded that those were no longer problems. What would be the explanation I could give as to why the district court in issuing the consent decree no longer thought there were problems? What would I say he concluded that led him to resolve his prior concerns? I would say the statement of work is probably the number one thing he would point to, which showed that the issue of the groundwater classification made no difference to the implementation of the soil remedy. He had been concerned that those things were inextricably intertwined, but the statement of work shows that M. Hart and the United States agree that as implemented, there is in fact no conflict. And I would also point to page four of the district court's decision entering the consent decree, where he states that the remedial action described in the R.O.D. when viewed in light of how the statement of the work and consent decree proposed to effectuate that remedial action. So the solution is in the details here at a very more abstract level, because a R.O.D. is a high level, the record of decision that contains the remedy. It's a very high level planning document, but it requires many more iterations of more And once it got down to that more nitty gritty level, it was clear that the problems that the court had feared did not actually affect the actual remedy in any way. So the remedy is consistent with the national contingency plan. I also just want to remind the court that the standard before the district court is whether this consent decree is fair, reasonable and consistent with CERCLA and consistent with the purposes of CERCLA, which are to effectuate a prompt cleanup and to ensure that the public is reimbursed. And this consent decree abundantly satisfies those requirements. This court has also... Can I ask a question? Four minutes left. Just part of the statement of work and the decision banks on the fact that MCART can go in and do additional sampling and can do additional analysis and it's contingent on what Rhode Island does with respect to its groundwater classifications and the like. How far does it get when it so changes what the expectation is that it's no longer really what was in the consent decree, but something that EPA, I suppose, and MHART sort of privately agreed to? Because it does strike me that a lot of what it is was contingent and why MHART agreed to it, which is they could go back in and do more. Your Honor, any changes have to be within the scope of the remedy that has been approved. If they go outside the scope of the remedy, then the court's approval is required. And this is provided for in the consent decree and in the statement of work describes some minor changes that could happen that would be within the scope of the remedy. But if changes go beyond that, then the court's approval is required. Moreover, there's regulation that governs this and provides that if there are major modifications, there's administrative requirements as well as, of course, getting the court's authorization. If MHART ended up going in and doing additional sampling and looking at that bass and how much fish and fillets they ate and all that and decided that the RCRA C cap was no longer necessary, is that something that they'd have to go back in and get approval from the court? Well, we'd never get to that point because EPA would never agree to that. They have agreed to implement the RCRA C cap on the source area, which is a separate thing from the fish issue. But absolutely, if a change of that nature were to be made, it would require EPA to go through some administrative measures and it would require the court's approval before that could go forward. That is not within the scope of changes that can be made. But more sampling to implement the design of these remedies, the specific design, that is a normal part of the circular process. The court does not set all the engineering details. One more point. I just want to make sure I understood something you said to me, which was the EPA had two arguments in their motion for reconsideration about the RCRA cap point. One was that the RCRA cap was not inextricably intertwined. And so the district court was wrong to have thought it was. And the second point was that the groundwater finding was not lacking in evidence, as the district court thought. Right? Right. Yeah. If I understood you, you were saying that we could read the consent decree to have embraced the first of those two arguments? You could read it to embrace either one. I think the evidence is very clear. First of all, this court, you don't have to find the district court actually made these findings itself. You're reviewing, did it abuse its discretion? And well, let me just answer your question directly. The groundwater was initially classified as very dirty and unusable. Then it was corrected under federal rules to a potential source of drinking water. And then just a year ago, Rhode Island had a state groundwater plan. The time of the entry of the consent decree. Yes. Prior to the reclassification using Rhode Island's system. We were in the same situation we were when he issued his phase one order. Yes, but at all points, no matter how that groundwater has been classified, the soil remedy for the source area has remained a RCRA C-CAP. That's still the case. That's always been the case. And so that's pretty good evidence that it really doesn't matter how you classify the groundwater. The last point, I know I'm running short on time. I just wanted to rebut Mr. Killian's point that the phase one finding of non-liability only pertain to dioxin. That is not correct. The case management order required that all evidence, and it's the district court that put all in italics, all evidence pertaining to a U.S. liability for contamination of the site had to be presented in phase one. And very importantly, in the appendix on page 486, which is page 183 of the phase one decision, the district court specifically found that the turbine oil in the drums did not contain any hazardous substance. Not only not dioxin, but also not the other pollutants that Amhart had tried to establish still made DOD liable. And just before you finish, from my perspective, what is your answer to your opponent's contention that they had no opportunity to make the case at the time of settlement that he was not looking at a whole range of evidence that might have, that was relevant and that you couldn't make a finding as he did without having considered that evidence? I think the district court addressed that issue very well himself. He said if that were all it took to stop a settlement, that there might be something else out there that nothing would ever settle. What you have, all you need, according to this court's precedence, is some rough approximation of a party's relative share of the liability and their contribution to the cleanup. And here we have far beyond what is normally available. We had a 20-day trial after extensive discovery. The district court properly said this was litigated into the ground. And the district court was very well aware that this theoretical possibility that there might be something else out there was not a reason to reject. It would be, he would have not followed the proper standard for review of consent decrees if he had allowed that to say, well, there still might be something, so I'm going to reject this consent decree. You know, in conclusion, Your Honor, the ultimate question before this court is whether the district court abused its discretion in finding that this consent decree is fair, reasonable, and consistent with the purposes of CERCLA. It is already bringing about a prompt and effective and thorough cleanup of a very dangerous CERCLA site and fully reimbursing the public for past and future response costs. None of the non-settling PRP's quibbles come close to showing an abuse of discretion, and we ask that you affirm the district court's sound and extremely well-informed exercise of discretion after his 13 years of managing this litigation and allow this cleanup to go forward. Thank you. Thank you. If you could, thank you. Yeah, Mr. Habermill, if you could unmute and you'll have five minutes to argue. Good afternoon, Your Honors. This is Joe Habermill. I'm counsel for Emhart Industries and Black & Decker in the case, and I believe I'm in the unique position of being the counsel for a party that both challenged and is now implementing the remedy and also participated in both phase one and phase two as lead trial counsel. So I thought I'd start off where Ms. Pepin left off with the DOD point. She's absolutely correct, and I want to dispel what might be a misunderstanding. The claims against the NECC customers other than the Department of Defense were stayed at the request of the NECC customers. There was a joint stipulation that was submitted to Judge Smith by everyone that the claims against the NECC customers and the discovery on the extent to which they contaminated the site by supplying drums to NECC would be deferred until phase three, and then in phase one, Emhart's liability will be determined, and then in phase two, the remedy challenge that Emhart made will be tried. DOD, as the judge acknowledged in the case management order that came out that set the phasing, and I apologize for not having a joint appendix reference, but it's ECF-222. There are numerous case management orders that contain the same thing. DOD was in a unique position because with respect to one contaminant, dioxin, Emhart's defense in phase one was that the dioxin was from DOD, not Emhart. So rather than have DOD's liability parsed out over both phases, the structure was all evidence, all discovery on all substances for DOD's liability would be done in phase one, and then if they were found liable, presumably, along with Emhart after phase one, in phase three, the contribution shares and proportionate responsibilities will be determined when we decided the liability of the NECC customers. So everyone pushed for the appellants not to be participating in phase one and two. They were aware of that at the time. No one objected to this, and Ms. Pepin's correct. The trial in phase one was not just with respect to dioxin. It was whether or not Emhart could prove that the drums received from the Air Force Base and the Navy Base contained any hazardous substances, and after the trial, the judge found that we hadn't proven that. So we came into the settlement negotiations over the consent decree in a position that one of the federal parties was already found not to be liable for anything, any hazardous substances sent to the site, and I think it's important to keep that context in mind when you evaluate the amount that they agreed to pay to resolve the case. The second point I'd make... Can I just ask you, at the time of settlement, was there any... What was the nature of the showing made about what was lacking about the evidentiary basis for the finding as to DOD by your opponents?  I'm not aware of any, Your Honor, in connection with the briefing ahead of the... They fought on opposition to the entry of the consent decree and in the hearing, and there was extensive discovery. This case has gone on for so long, even I haven't participated in all of it, including the discovery portion with respect to DOD, but I tried the case. They didn't point to anything other than, I think, an argument as opposed to something in the record that turbine oil sure sounds like it might have something hazardous in it, but we had the opportunity to do that. We had a trial on it, and we lost on that. With respect to the RCRA C-CAP, I'd just like to point out that, in our view, Judge Smith never found that the RCRA C-CAP, in the absence of its necessity because of the groundwater classification, would be arbitrary and capricious. He, in my view, deferred on that because he wanted to figure out what they were going to do on the groundwater issue, and then have us come back and see if we agreed or disagreed on whether or not the RCRA C-CAP could be justified without it. In the phase two trial, we raised what were largely implementability concerns because this isn't a landfill, it's a plot of land on the Winnebago River that has two apartment buildings that house the elderly. Are you saying, in your view, it is inextricably linked, or are you saying it's not inextricably linked? It's not. It was part of the justification, and if the groundwater remedy had... Let me ask it this way. EPA suggests that we can affirm the consent order by understanding it to implicitly have found that the RCRA C-CAP is not inextricably linked to the groundwater finding. Do you agree with that or not? Yes, I agree with that. In fact, Your Honor, probably 80% or 90% of a RCRA C-CAP is already on the site. Work has commenced. The remedy is being implemented with a RCRA C-CAP. I don't quite get the significance of that. That might be harmful to you in the sense that if it is inextricably linked, that wouldn't necessarily help your case. I would only point out, Your Honor, that the implementability issues that Judge Smith had about the RCRA C-CAP in the absence of the groundwater justification was why he ultimately concluded that a RCRA C-CAP was still appropriate and vacated the prior ruling. To the extent that that was referenced in the statement of work, as was the anticipated change in the groundwater classification, that's specifically in the statement of work that's incorporated in the consent decree, he understood from that and the party who had raised the implementation challenges that, in our view, those implementation challenges had been addressed and we weren't challenging the RCRA C-CAP. Thank you, Your Honor, unless anyone has any additional questions for me. Thank you. I think we have rebuttal from Attorney Killian. Right. Thank you, Your Honors. I will be brief. I'd like to start with the settlements and then work back to the remedies. So as to the settlement, Ms. Pepin read to you one sentence from the case management order. Let me read the court the second sentence at AP 297. However, during this phase, meaning phase one, the evidence will be used solely to determine the liability of MHART and NECC and whether this liability, if proven, is divisible among the two parties. And as Mr. Halpernell just told the court, the only issue for divisibility in this case was as to dioxins. And so as the district court itself recognized at the end of the phase one opinion at AP 432 and 433, its conclusion that DOD was not liable for anything was beyond the scope of the case management order. And we think not fair to the parties like us. Now, you asked earlier about whether there's anything in the record that specifically links this turbinol with PCBs. I'm not able to dig it up right now. I can tell the court seriously our theory based on EPA's own website, which lists turbinol as a source of PCBs. This isn't speculative. This isn't sort of a pie in the sky theory. This is a theory that is based in EPA's own materials provided on the public website. Now, turning back to the remedial portion of the case. Excuse me, was that presented to the judge at all? I believe it was mentioned, but I don't think there was more than a mention at the hearing. And that's what I'm unable to dig up for your honors right now based on the transcript. Your honors, it's not clear why the district court. Before you go to that, because I'm still a little confused about the nature of your argument, because there's an aspect of it which seems substantive and an aspect which seems procedural. So one version of it is that given the record that he had before him, the district court simply could not have made the DOD finding that he made. And that has nothing to do with your opportunity rights to have made a case or not. You're just saying given what evidence he had, he just can't have made that finding. That just seems like a substantive argument, which I understand. And then we just look at the record and we decide whether given the standard, it's enough. The procedural variant of it seems to be that you're suggesting somehow you didn't have a chance to do something. And I don't understand what the relationship. I'm not even sure you raised that to us on appeal. That's correct, your honor. I don't think we're affirmatively saying that the consent decree, excuse me, well, the settlement portion needs to be vacated because we lacked an opportunity to develop this case. Our focus is on the evidence that EPA put forth to justify the $550,000. What I'm bringing up the rest to say is that we do think there's a fair chance this isn't just sort of fly specking. We did sit by, we waited for phase three, and there is something yet to be proven here. And so when EPA comes to the court and says DOD is not liable, look what you said in phase one, your honor. That's not a complete basis for concluding that EPA is not liable because 20 other NECC customers have contribution claims against DOD on a different theory. So turning now to the remedy, at AP page 785, the district court, this is from the hearing on the consent decree. And this is why we think fundamentally it's unfair and inaccurate to read the district court's four page order approving the consent decree here is somehow reflecting a substantive reevaluation of the phase two order. Quote, if Emhart doesn't find the remedy arbitrary and capricious, then who cares really? I mean, why do we need to worry about it? We think the district court applied the wrong standard. He approached this settlement, this consent decree as if it were a private arrangement. It was extra deferential, relied on the hope that an ESD or a statement of work might fix the things that the court found unlawful in phase two. One question about a point that was raised on this exact point about RCRA, which is the statement of work provides for a modification on the groundwater issue. The statement of work is supposed to be an implementation of the remedy, correct? I'm just saying if it does, it contemplates a change in the finding on the groundwater issue, but it doesn't contemplate the RCRA C cap going away. So isn't that pretty good evidence that they thought they were that the district court thought they were not inextricably linked? I think that I think that reads too much into the statement of work simply because what a statement of work is supposed to do is take the consent decree, take the remedy and tell the party, here's the part you're doing. It's not supposed to change in any material way what the remedy does. We think Emhart places far too much reliance on the statement of work because in essence, Emhart is saying the statement of work changed the remedy in an improper way. So for these reasons, your honors, we would ask that the consent decree and the settlement be vacated and that this be sent back so the proper procedures can be complied with. Thank you. That concludes the argument for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the hearing.